Ilslby, J.
Several of the creditors of John F. McGinn had issued executions in the judgments which they had respectively obtained against their debtor, and in virtue thereof the sheriff, on the 4th Deoeraber, I860, levied on a stock of goods.
Subsequently, on the 20th March, 1861, the plaintiffs, third opponents, caused to be stayed in the sheriff’s hands the proceeds of John F. Mc-Ginn’s stock of goods, out of which they claimed to be paid the amount due them, say six hundred and ninety-seven dollars, for which they held the lessor’s pledge, and claimed to be paid therefrom the amount due them by privilege and preference.
After trial in the court below, the claim of the third opponents was sustained according to the prayer of the petition, and the balance, if any. of the proceeds of sale, was ordered to be paid to the seizing creditors ir the order and rank of their seizures.
From this judgment the defendants have appealed.
A very careful examination of the record satisfies us that there is in error in the judgment of the District Court.
No objection seems to have beaL made to the introduction, as evidene< *267 on the trial, of the opponent’s judgment against the common debtor, John E. McGinn, by which their privilege was recognized on the goods seized, by virtue of the.several fieri facias sued out by the defendants. This judgment, not having been attacked for fraud and collusion, is prima fade evidence against third parties. Judson v. Connolly, 5 A. 401. Fox v. Fox, 4 A. 135. 17 La. 205. 15 La. 59. Adams v. His Creditors, 14 La. 459. And there is no evidence in the record to disprove the validity of the opponents’ claim and privilege, which is superior to those of the seizing creditors.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed, at the costs of the appellants.
Petition for a Rehearing, by appellants. — On the 4th December,' 1860, the appellants levied their executions on the stock of goods, the proceeds of which are in controversy. On that day, then, they acquired a privilege on the stock of goods for the payment of their judgments. Code of Practice, Art. 722. Even the bankruptcy of the judgment-debtor, if subsequently declared, could not defeat this privilege. Campbell v. His Creditors, 3 Rob. 106.
The rendition of another judgment against him, or the registry of another lien after that date, could not defeat it. Antognini v. Railey, 11 A. 275. Payne & Harrison v. Raerdon, 10 A. 349.
The appellants then had a special privilege fastened on these goods from and after the 4th December, 1860.
By what means is it sought to oust this fixed privilege? Solely by a judgment rendered on the 8th February, 1861; more than two months afterwards, in a suit brought seventeen days previous to judgment, or nearly two months after our special privilege was acquired by actual seizure under our judgments — a suitto which we were entire strangers — a suit which proceeded in hot haste, and evidently without contestation, if not by connivance, without any manner of notice to us, then known to be the only interested parties; and a judgment, which simply recognized a privilege without a date from which the privilege was to run.
What is the effect of this judgment rendered in a suit brought so long subsequent to the acquisition of our special piivilege?
If it were res judicata as to us, it could not bust our privilege, because it does not antedate it.
But it is not res judicata as to us. for we were strangers to it. The plaintiffs avoided making us parties, well knowing that if we were cited, no such judgment could be obtained.
As to us, this judgment, (introduced in evidence simply) only proves rem ipsam, that such a judgment was rendered at such a date. The privilege recognized by it, as to these strangers to the judgment, can only date from the rendition thereof, aud can in no view affect our acknowledged lien acquired two months before. It cannot fetroact to divest the already vested rights of third persons, strangers to the .judgment. Its terms and effect cannot be enlarged to their prejudice.
We are told it was not objected to as evidence. It could not have been objected to, for it was admissible to prove rem ipsnm, and that was all it was offered for, as will be shown presently. This Court cannot presume that it was offered for. illegal purposes, and therefore give it a greater effect than the law ascribes to it, viz: the effect of res judicata as to strangers, which is boldly claimed for it in so many words in the plaintiffs’ brief. “A record, or other paper, which is legal evidence of one fact and not of another, is never presumed to have been offered to establish what by law it could not; and though no exception be taken to ihe pan illegal, the exception may be made on appeal.” Breedlove v. Turner, 9 M. 380. Lartigue v. Baldwin, 5 M. 496. Amoat v. Russel, 1 N. S. 527.
Moreover, the appellees themselves, by their subsequent course iu *268 proving up tlieir case, show that they had only offered the judgment to prove vein, ipsam; for they went on to introduce testimonial proof to establish a privilege antedating ours, viz: by introducing A. S. Norwood, H. Reinbarg and A. McKenna, (Rec. pp. 4 4J4) to show a contract of lease which would carry a lessor’s privilege back of our seizure, an attempt in which they utterly failed. Por they only proved an occupation without any contract of lease, or any fixed price of a house worth, they should think,"$10 or $12 per month, perhaps more! It was fully decided, in Jordan v. Meade, February 10th, 1867, and in Haughery v. Lee, 17 An. p. 22, and cases there cited, that no lessor’s privilege could flow from such a state of facts. If it could, a large part of the pretended claim was prescribed, although prescription was specially pleaded.